# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE MULLINS, : | No. 3:17cv1042 |
| Plaintiff : | |
| : | (Judge Munley) |
| v. : | |
| : | (Magistrate Judge Saporito) |
| NANCY A. BERRYHILL, : | |
| Acting Commissioner of Social : | |
| Security, : | |
| Defendant : | |

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge Joseph F. Saporito's report and recommendation (hereinafter "R&R") which proposes reversing the decision of the Commissioner of Social Security denying plaintiff's claim for a disability insurance benefits under Title II of the Social Security Act. (Doc. 14). Plaintiff's action is brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g). The matter is fully briefed and ripe for disposition.

**Background**

Plaintiff began her quest for disability insurance benefits on April 15, 2014, when she filed a Title II application due to migraines, depression, herniated discs in her back, and sciatia. (Doc. 14, R&R at 2). Plaintiff alleges that her disability

began January 25, 2013. (Id.)  After the Social Security Administration (hereinafter "SSA") denied plaintiff's application on June 25, 2014, plaintiff requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (Id.)

At the hearing on February 5, 2016, ALJ Richard Zack found that plaintiff was not disabled under the Social Security Act. (Id. at 3).  Plaintiff sought further review of her claims by the SSA Appeals Council, and but her request was denied on April 18, 2016. (Id.) Thus, the ALJ's decision is the final decision of the Commissioner.

Plaintiff initiated the instant action on June 14, 2017, asking us to reverse the decision of the ALJ and award benefits, or remand for a new hearing. (Doc. 1).  Plaintiff seeks this reversal on the grounds that the ALJ's decision to deny her claim for benefits was not supported by substantial evidence and contains errors of law.

Magistrate Judge Saporito reviewed the record in this case and recommends that the final decision of the Commissioner of Social Security denying plaintiff's benefits be reversed and remanded for further proceedings. (Doc. 14).  The Commissioner filed objections to the magistrate judge's R&R. (Doc. 15).  On October 8, 2018, the plaintiff filed a response, bringing the case to its present posture. (Doc. 16).

**Jurisdiction**

The court has federal question jurisdiction over this SSA appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business....").

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. S 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are

4

bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates disability benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

6

Applying the five-step sequential analysis to the instant case, the ALJ found at Step 1 that plaintiff has not engaged in substantial gainful activity since January 25, 2013, the alleged onset date. (Doc. 10, Tr. of Proceedings at 17). At Step 2, he found that plaintiff had the following severe impairments: lumbar disc disease and cardiac problems. (Id.) At Step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Id. at 20).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b)." (Id.) The plaintiff can "lift and carry 20 pounds occasionally and 10 pounds frequently." She could "sit, stand and/or walk for six hours during a normal workday." (Id.) She has the "full use of her upper extremities for reaching, handling, fingering and feeling objects," but should "avoid being in a highly dangerous work environment[,]" which would mean "a job where she would have to climb ladders or scaffolds or be around unprotected dangerous heights, unprotected dangerous machinery or be exposed to excessive vibrations." (Id.) The plaintiff "should avoid exposure to extremes of temperature, humidity, heavy concentrations of dust, fumes and gasses." (Id.) According to the ALJ, the

7

plaintiff "would have no difficulty in terms of social interaction with co-workers, supervisors or the public." (Id.)  In terms of complexity of work, the plaintiff "would have difficulty doing a highly detailed or highly complex occupation and would be limited to, at most, a three or four step work process job in terms of the complexity." (Id.)

The ALJ then proceeded to Step 4 of the sequential evaluation where he found that plaintiff was "unable to perform any past relevant work." (Id. at 25). The ALJ identified past relevant work as a material handler and forklift operator, stating each required medium or heavy exertional work. (Id.)

Finally, at Step 5, the ALJ determined that because plaintiff is an individual closely approaching advanced age at 52, has at least a high school education, and is able to communicate in English, plaintiff could successfully adjust to other work. (Id. at 26).  Specifically, the ALJ found that plaintiff could perform the requirements of representative occupations such as a weigher/measurer/checker, a stock clerk marker, and a laundry worker. (Id.)  A vocational expert testified at the hearing before the ALJ that these jobs exist in the national economy for an individual with the plaintiff's age, education, work experience, and residual functional capacity. (Id.)   As such, because the ALJ concluded that plaintiff is capable of making a successful adjustment to other

8

work, he determined that plaintiff does not qualify as a disabled individual. Plaintiff then filed the instant appeal.

As noted above, the Clerk of Court assigned plaintiff's appeal to Magistrate Judge Joseph F. Saporito for an R&R. Magistrate Judge Saporito recommends reversing the decision of the Commissioner of Social Security and remanding the case for further proceedings. (Doc. 19). Magistrate Judge Saporito determined that the ALJ's decision to deny plaintiff's claims for disability benefits is unsupported by substantial evidence in the record. Specifically, the magistrate judge found that the ALJ erred by not giving "great" or "significant" weight to the medical opinion of Dr. Scalia, plaintiff's treating physician.

The Commissioner objects to Magistrate Judge Saporito's R&R, asserting that the ALJ was reasonable in affording no weight to the plaintiff's treating physician's opinion because the opinion was not supported by the overwhelming majority of plaintiff's medical records. As such, the Commissioner contends that the ALJ appropriately discounted the opinion in coming to its conclusion. We now address this issue.

The Social Security Regulations provide that "medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your

9

impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Treating physicians, examining physicians, and non-examining physicians may provide medical opinions. 20 C.F.R. § 404.1527(c)(1)-(2). The Regulations provide special deference to medical opinions from treating sources who have "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" ("treating source rule"). 20 C.F.R. § 404.1527(c)(2)(i).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record....' " Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject a treating

physician's opinions outright only on the basis of contradictory medical evidence. Id. at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation, or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

In the instant matter, the record reflects that the ALJ reviewed the plaintiff's medical records from Dr. Robert Scalia, plaintiff's treating physician, spanning from February 7, 2013 to May 19, 2014. (Doc. 10, Tr. of Proceedings at 22). Dr. Scalia's treatment notes report that at the beginning of her treatment, plaintiff complained of arthralgia and pain, but denied myalgia and numbness. (Id.) She also complained of low back and mid back pain associated with stiffness of her low and mid back. (Id.) Dr. Scalia noted that the plaintiff's low back pain was well controlled while the plaintiff was taking Percocet. (Id.) During physical examinations, Dr. Scalia noted that the plaintiff had a full range of motion of her neck. (Id.) He found no edema of plaintiff's lower limbs, and observed that the plaintiff walked with a normal gait. (Id.) Dr. Scalia did, however, note tenderness

11

to the plaintiff's lumbosacral spine with a degreased range of motion. (Id.) He found normal motor strength bilaterally in plaintiff's upper and lower extremities, but noted that plaintiff experienced pain in the lower left. (Id.) Dr. Scalia assessed that the plaintiff had an intervertebral disc displacement of a lumbar disc without myelopathy. (Id.) He ordered that the plaintiff continue her treatment with Percocet. (Id.)

On August 9, 2013, Dr. Scalia completed a medical source statement for the plaintiff, opining that: "the plaintiff could lift and carry 20 pounds occasionally. In an eight-hour work day, [plaintiff] could sit, stand and/or walk one hour. [Plaintiff] does not require the use of a cane to ambulate." (Id. at 23). Dr. Scalia further opined that the plaintiff could use her hands to occasionally reach, but never handle, finger, feel, push or pull. (Id.) She could occasionally use her feet to operate foot controls. (Id.) He opined that the plaintiff should avoid climbing ladders or scaffolds, balancing, stooping, kneeling, crouching or crawling, and should avoid unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and vibrations. (Id.)

Eight months later, on April 21, 2014, Dr. Scalia diagnosed the plaintiff with herniated discs from chronic back pain. (Id.) He opined that the plaintiff could now lift and carry up to 10 pounds occasionally, but no amount of weight frequently. (Id.) In an 8-hour workday, Dr. Scalia opined that she could sit zero to two hours and stand/walk up to one hour. (Id.) The plaintiff could rarely use her upper and lower extremities to push or pull controls, and could rarely use her hands to reach, handle, or finger, but she could occasionally use them to feel. (Id.) Dr. Scalia opined that she should avoid temperature extremes, noise, dust, vibration, humidity, wetness, hazards such as machinery and heights, fumes, odors, chemicals, gases, and light. (Id.) He opined that she would require unscheduled breaks and excessive restroom breaks every 30 minutes, and would need to be absent from work due to her impairments at least three days per month. (Id.)

The ALJ afforded "no weight" to Dr. Scalia's opinions. Instead, the ALJ reviewed the record on his own, and concluded that the plaintiff's medical records do not support the doctor's opinions. Significantly, Dr. Scalia's opinion

was the only medical opinion given regarding the plaintiff's physical functional limitations.[1]

The Third Circuit has repeatedly held that an ALJ may not reject an uncontradicted treating source opinion with only lay reinterpretation of medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 29–30 (3d Cir. 1986); Ferguson v. Schweiker, 765 F.2d 31, 37, 36–37 (3d Cir. 1985); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983); Rossi v. Califano, 602 F.2d 55, 58–59, (3d Cir. 1979); Fowler v. Califano, 596 F.2d 600, 603 (3d Cir. 1979); Gober v. Matthews, 574 F.2d 772, 777 (3d Cir. 1978). While an ALJ may resolve issues of credibility as to lay testimony, or choose between opposing medical opinions, he is not free to set his own expertise against that of a physician who testified before him. Gober, 574 F.2d at 777.

The Commissioner argues that the above-cited Third Circuit cases are outdated, and because the SSA has since promulgated new regulations, specifically 20 C.F.R. § 404.1527(c), we should focus our attention solely on the regulation language. The new regulation, which we discussed more extensively

---

[1] As noted by the ALJ, a state agency medical consultant did not assess the plaintiff's physical limitations in this case. (Id. at 20).

14

above,[2] states that a treating physician's opinion is entitled to controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2)).[3] The Commissioner argues that a reasonable interpretation of this regulation would suggest that an ALJ may discount a treating physician's opinion if he finds, through his lay reinterpretation of medical evidence in the record, that the opinion is inconsistent with other medical records.[4] We disagree.

Notably, the Third Circuit Court of Appeals has not addressed how an ALJ should treat an uncontradicted treating source opinion since the SSA promulgated the new regulations. Several other circuits, however, have, and the First, Second, Seventh, Eighth, and Tenth Circuits all continue to hold that "an ALJ many not reject an uncontradicted treating source medical opinion with only

---

[2] See page 9.

[3] As noted by the magistrate judge, § 404.1527 is the rule for evaluating opinion evidence that was in effect at the time of the ALJ's decision. For claims filed after March 27, 2017, the rules in § 404.120(c) apply.

[4] The ALJ found that Dr. Scalia's opinion was inconsistent with the plaintiff's medical records because her "physical examinations were essentially normal except for . . . complaints of tenderness. In addition, the [plaintiff] was never seen or treated by an orthopedist or neurosurgeon for her back pain." (Doc. 10, Tr. of Proceedings at 23). These alleged inconsistencies are left largely unexplained by the ALJ.

15

lay reinterpretation of medical evidence. See Tilton, 184 F. Supp. 3d at 142-143 (collecting cases from the First, Second, Seventh, Eighth, and Tenth Circuits). Further, as the court analyzed in Tilton v. Colvin, 184 F. Supp. 3d 135, 142 (M.D. Pa. 2016), the new regulations are "compatible with Frankenfield, Doak, Fergueson, Kent, Van Horn, . . . Kelly, Rossi, Fowler, and Gober for any uncontradicted, well supported treating source opinion." "[T]he intent to codify, rather than change, the existing law with 20 C.F.R. § 404.1527(c) has [also] been noted by Congress, the Supreme Court, and the Social Security Administration itself." Id.

As such, we, too, conclude that an ALJ may not reject an uncontradicted treating source opinion with only lay reinterpretation of medical evidence. Dr. Scalia, who had treated the plaintiff on several occasions, over a significant amount of time, was in the best position to render an opinion on the plaintiff's physical restrictions. Therefore, the ALJ in this case erred by affording no weight to his uncontradicted treating source opinion.

**Conclusion**

Because the ALJ erred in not affording weight to plaintiff's treating physician's opinion, we find that his decision was not supported by substantial

16

evidence. Thus, we will overrule the Commissioner's objection and adopt Magistrate Judge Saporito's R&R. This case will be remanded for further proceedings. An appropriate order follows.

**BY THE COURT:**

**Date: October 31, 2018**             **s/ James M. Munley_____
                                        JUDGE JAMES M. MUNLEY
                                        United States District Judge**